COURT OF APPEALS
DECISION
DATED AND FILED

January 5, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP146-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF264

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

THOR S. LANCIAL,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Dunn County: ROD W. SMELTZER, Judge. *Reversed and cause remanded for further proceedings.*

Before Stark, P.J., Hruz and Gill, JJ.

¶1 HRUZ, J. Thor Lancial appeals a judgment convicting him of ten counts of possession of child pornography. Lancial argues that the evidence presented at his jury trial was insufficient to support his convictions because the

State did not show that he possessed child pornography "on or about July 9, 2019," which was the date alleged in the Information. In the alternative, Lancial contends that the circuit court erred by denying his motion to suppress. He argues that the terms of the search warrant at issue did not authorize law enforcement to search his cell phone, which was located in the residence that was the subject of the warrant.

¶2 We conclude that there was sufficient evidence to support Lancial's convictions, and therefore he is not entitled to a judgment of acquittal. The evidence supported a reasonable inference that Lancial affirmatively accessed the ten images of child pornography within four or five months before law enforcement seized his cell phone on July 9, 2019. In addition, the evidence regarding the timing of the offense was sufficient because it substantially corresponded to the date alleged in the Information and because Lancial has not argued that this proof has affected any of his material rights.

¶3 Nevertheless, we also conclude that the terms of the search warrant did not authorize law enforcement's search of Lancial's cell phone. The warrant authorized law enforcement to seize electronic devices, including Lancial's cell phone, but it did not authorize law enforcement to search those devices. The warrant also did not authorize law enforcement to search for or seize any item that might be found within the digital storage of Lancial's cell phone. Thus, law enforcement exceeded the scope of the warrant and unlawfully searched Lancial's cell phone. The State alternatively argues that the exclusionary rule does not apply and, even if it did, the good-faith exception should excuse the State's misconduct. We reject both arguments because the warrant plainly did not authorize a search of Lancial's cell phone. Accordingly, we reverse Lancial's convictions and remand for further proceedings consistent with this opinion.

2

## BACKGROUND

¶4      In July 2019, the State filed a criminal complaint charging Lancial with ten counts of possession of child pornography. The complaint alleged that in April 2019, Officer Maloree Zassenhaus of the Menomonie Police Department received a cyber tip line report from the National Center for Missing and Exploited Children (NCMEC) regarding an image uploaded to the Internet. The report described the image as a female who was nude from the waist down and appeared to be under the age of fifteen years old. The tip further noted that the image had been uploaded on March 3, 2019, from Lancial's father's Internet Protocol (IP) address.[1] The complaint further stated that Zassenhaus executed a search warrant of Lancial's father's home on July 9, 2019, and seized, among other things, a black Samsung cell phone that belonged to Lancial. Zassenhaus later downloaded and examined the contents of that phone, which included at least ten images of suspected child pornography.

¶5      After entering a plea of not guilty, Lancial filed a motion to suppress all evidence obtained from the search of his cell phone. Lancial argued that Officer Zassenhaus had not obtained a warrant to search the phone before downloading and examining its contents. The circuit court held a hearing on Lancial's motion, at which Zassenhaus testified that she had obtained a search warrant on July 8, 2019, and it was her "understanding" that she "had legal authority to download and enter into" "any electronic device that was seized at the time of the warrant."

---

[1] "An IP address is a 'unique address that identifies a device on the Internet.'" *State v. Baric*, 2018 WI App 63, ¶4, 384 Wis. 2d 359, 919 N.W.2d 221.

3

¶6 Following Officer Zassenhaus's testimony, Lancial argued that the language of the warrant did not authorize a search of the electronic devices, including the cell phone.[2] He asserted that the scope of the warrant was limited to searching the residence and seizing any electronic devices therein. The court denied Lancial's motion, concluding the "search warrant was issued to search said premise[s] and/or phones for said things and it's specific what they were looking for."[3]

---

[2] Specifically, the warrant stated, in relevant part:

> WHEREAS, Maloree N. Zassenhaus has this day complained (in writing) (under oath) to the said Court that on the 8th day of July, 2019, in Dunn County in and upon certain premises in Dunn County, Wisconsin, normally occupied by Richard L. Lancial …. Also, any vehicles associated with said premises.
>
> there are now located and (concealed) (in plain view) certain things, to-wit: laptops, tablets, or any electronic device that has user generated data stored in internal and external memory including e-mail, photos, video or other form of electronic communications or data included therein.
>
> which things may constitute evidence of a crime, to-wit: possession of child pornography contrary to WIS. STAT[]. [§] 948.12 and the subs thereunder.
>
> And prayed that a search warrant be issued to search said premises or phones for said things.
>
> NOW, THEREFORE, in the name of the State of Wisconsin, you are commanded forthwith to search the said premises, vehicle and persons for said things, and if the same or any portion thereof are found to bring the same and the person in possession, if the same are found, and return this warrant within 48 hours before this Court and be dealt with according to law.

[3] The Honorable Rod W. Smeltzer presided over all relevant proceedings in this case, but he was not the judge who issued the warrant. Therefore, he did not make any findings about what the warrant-issuing court knew or intended at the time of issuing the warrant.

¶7      The case proceeded to a two-day jury trial. The jury first heard testimony from Officer Jeremy Wilterdink. He testified that he received a cyber tip from NCMEC in the spring of 2019 regarding potential "child exploitation material" associated with the IP address at Lancial's father's residence. He further testified that he sent the cyber tip information to Officer Zassenhaus, who became the lead investigator.

¶8      Lieutenant Kelly Pollock also testified, and she described how she interviewed Lancial while law enforcement executed the search warrant on July 9, 2019. During that interview, Lancial asked whether someone could have hacked his father's IP address or whether the IP address could have been linked through something "popp[ing] up on a computer or … digital device." Lancial admitted he had a cell phone, but he said he did not use it for phone calls because it could only be used while connected to Wi-Fi. He also said that he was the sole user of his cell phone and that everyone in the household had their own devices.

¶9      The jury next heard from Officer Zassenhaus. She testified that Officer Wilterdink provided her with information regarding the NCMEC cyber tip, which she then used to obtain a search warrant for Lancial's father's home. Zassenhaus stated that she and other police officers executed the search warrant on July 9, 2019. During the search, Zassenhaus retrieved a number of electronic devices, including a "Samsung Galaxy J7" cell phone that Lancial had admitted was his phone. Zassenhaus said she searched each device and ultimately discovered images of child pornography on only the Samsung Galaxy cell phone.

¶10     Officer Zassenhaus testified that Lancial's cell phone contained approximately 7,200 images in total, including "some icons which come standard on the phone," "selfie images of [Lancial]," and "images of other family

members." Zassenhaus noted, however, that the "majority of the images" were of girls "in gymnastics leotards in different gymnastic poses[,] … young girls in bikinis or swimsuits[,] as well as some of the child pornography."

¶11 Officer Zassenhaus also identified and described the ten images of child pornography that served as the basis for the State's charges. Zassenhaus noted that nine of the ten images were screenshots, which she described as an image taken by the user of a cell phone "that captures the exact data that's on the front face value of the phone at that time, whether it be an image or any type of application that got pulled up." She admitted that none of the images contained metadata disclosing when the images were downloaded. Zassenhaus also conceded that she did not know whether the ten images were downloaded in March or June of 2019, or on "some totally other date." Nor could she say whether the images "came on to the phone in the same event that triggered [the NCMEC] cyber tip."

¶12 Anthony Stofferahn, a digital forensic examiner for the Wisconsin Department of Justice, was the last witness to testify. He described how he completed a physical extraction of the data on Lancial's cell phone and how he identified approximately twenty-two images that were possible child pornography. Stofferahn stated that the "web history [on the phone] wasn't as extensive as [he] thought it would be," but he also recognized that the phone had "a Tor Onion Browser" and twelve virtual private networks (VPNs). He explained that the TOR Onion Browser "allows [the user] to search through the [I]nternet, in a sense, anonymously" and "[i]t doesn't save as much … web history." He also described how VPNs can be used to mask a device's IP address.

¶13 Of the images at issue in the trial, Stofferahn testified that "[a]ll ten images were located in the cache file within the gallery [application] of the device." Stofferahn explained that "the gallery application is where all of [the cell phone user's] photos are taken and stored, whether it be downloaded or physically taken itself with the device." He further explained that when the user of a cell phone clicks on a thumbnail image in the gallery application to make that photo larger, a smaller image of that photo is created and placed in the cache file, which essentially "allows … the gallery application to open and find those photos faster." Stofferahn testified that this process of a user clicking on a thumbnail image was the only way an image would be placed in the cache file. He also noted that the user of a cell phone would not see the cache file. Stofferahn conceded, however, that he did not have any information about when the images were downloaded onto the phone or when the images in the cache file were created.

¶14 The jury ultimately found Lancial guilty of all ten counts of possession of child pornography. The circuit court sentenced Lancial to concurrent terms of four and one-half years' initial confinement followed by ten years' extended supervision on each count.

¶15 Lancial now appeals. He first argues that the trial evidence was insufficient to support his convictions, such that he is entitled to a reversal of his judgment of conviction and an entry of a judgment of acquittal. He alternatively argues that the search of his cell phone exceeded the scope of the warrant, such that the circuit court erred by denying his motion to suppress evidence and he is entitled to a new trial without that evidence. Additional facts will be provided as necessary below.

7

## DISCUSSION

### I. Sufficiency of the evidence

¶16 A defendant challenging the sufficiency of the evidence bears a heavy burden to show that the evidence could not reasonably have supported a finding of guilt. *State v. Beamon*, 2013 WI 47, ¶21, 347 Wis. 2d 559, 830 N.W.2d 681. Whether the evidence was sufficient to sustain a verdict of guilt in a criminal prosecution is a question of law that we review de novo. *State v. Smith*, 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410.

¶17 In reviewing the sufficiency of the evidence, we will uphold a conviction unless the evidence, viewed most favorably to the State and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt. *State v. Sholar*, 2018 WI 53, ¶45, 381 Wis. 2d 560, 912 N.W.2d 89. "[T]his court will uphold the conviction if there is any reasonable hypothesis that supports it." *Smith*, 342 Wis. 2d 710, ¶24. We must decide a sufficiency of the evidence claim even if there are other grounds for reversing the conviction that would not preclude retrial. *State v. Ivy*, 119 Wis. 2d 591, 610, 350 N.W.2d 622 (1984).

¶18 As relevant to this appeal, the State was required to prove that Lancial knowingly possessed a recording depicting a child engaged in sexually

explicit conduct or in any way accessed the recording with the intent to view it.[4] *See* WIS. STAT. § 948.12(1m); WIS JI—CRIMINAL 2146A (2020); *see also* WIS. STAT. § 948.01(3r) ("'Recording' includes the creation of a reproduction of an image or a sound or the storage of data representing an image or a sound."). As defined by the pattern jury instruction, "'[p]ossessed' means that the defendant knowingly had actual physical control of the recording." WIS JI—CRIMINAL 2146A (2020) (footnote omitted). The pattern jury instruction also provides that a recording can be "in a person's possession if it is in an area over which the person has control and the person intends to exercise control over the recording." *Id.* The circuit court gave these jury instructions regarding the meaning of possession at Lancial's trial.

¶19     Lancial argues on appeal that the "evidence was insufficient to establish that [he] knowingly possessed child pornography on or about July 9, 2019"—i.e., the date of offense alleged for each of the charges in the Information. He notes that all of the child pornography images were in the cache file of his cell phone's gallery application, and that the images could not have been accessed or seen by a user of his phone while in the gallery application. He also emphasizes that none of the State's witnesses could testify as to when the images were added or deleted from the gallery application, nor did the images themselves contain any

---

[4] Lancial does not dispute that there was sufficient evidence to prove: (1) the images at issue showed children engaged in sexually explicit conduct; (2) he knew or reasonably should have known that the images contained depictions of sexually explicit conduct; and (3) he knew or reasonably should have known that the children engaging in sexually explicit conduct in the material had not attained the age of eighteen years. *See* WIS. STAT. § 948.12(1m) (2019-20); WIS JI—CRIMINAL 2146A (2020).

All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

metadata disclosing when the images were downloaded or accessed. Lancial therefore argues that the State simply "had no evidence showing when or how [he] allegedly downloaded or accessed the original images, or when those images were deleted from the phone."

¶20 In response, the State argues that *State v. Mercer*, 2010 WI App 47, 324 Wis. 2d 506, 782 N.W.2d 125, is dispositive. In *Mercer*, we held that "an individual knowingly possesses child pornography when he or she affirmatively pulls up images of child pornography on the Internet and views those images knowing that they contain child pornography." *Id.*, ¶31. The State argues that it "did not need to prove that it located *accessible* images of child pornography"; it needed to prove only that, at some point during the relevant time period, "the images were in an area over which [Lancial] had control and that he intended to exercise control over them." *See* WIS JI—CRIMINAL 2146A (2020). The State contends that the record supports reasonable inferences for the existence of both of these facts at the times alleged in the Information.

¶21 We agree with the State that a jury could reasonably find from the evidence presented at trial that, for some period of time, the ten images of child pornography were in an area over which Lancial had control and that he intended to exercise control over them. *See id.* As Stofferahn explained at trial, an image can be saved into the gallery application if the user of the cell phone takes a photo with the phone's camera, downloads the image from the Internet or from a text message, or takes a screenshot. Stofferahn further explained that an image is created and placed in the cache file of the gallery application only after the user of the cell phone clicks on the corresponding thumbnail image in the gallery application to enlarge the image. Specific to this case, Stofferahn testified that the

10

ten images of child pornography were found in the cache file of the gallery application of Lancial's cell phone.

¶22     Based on all of this evidence, the jury could reasonably find that Lancial affirmatively accessed the images of child pornography at least twice—once when saving the images to the gallery application, and once when clicking on the thumbnail image in the gallery application. *See **Mercer***, 324 Wis. 2d 506, ¶31. Indeed, Officer Zassenhaus noted that nine of the ten images were screenshots, which means they were images actively taken by a cell phone user.[5]  In other words, the jury could infer that the ten images were in an area over which Lancial had control and that he intended to exercise control over them. *See* WIS JI— CRIMINAL 2146A (2020).[6]

¶23     In his reply brief, Lancial concedes "that, under ***Mercer***, 'even if the actual child pornography is inaccessible, evidence of a defendant's affirmative acts' may be sufficient to prove possession of child pornography."  But he argues that because "there was no evidence … that he took any affirmative acts to access

_____

[5] Again, the evidence supported an inference that Lancial had saved the images to the gallery application, either by taking a screenshot of the images or by downloading the images. Thus, although one of the ten images was not a screenshot, the evidence permitted a reasonable inference that Lancial had downloaded that other image.

[6] We also note that, among other evidence supporting Lancial's guilt, the State explained that the lack of web browsing history on Lancial's cell phone was due to the "Tor Onion Browser as well as 12 VPNs" installed on the phone.  The jury could reasonably conclude that the reason there was no relevant search history evidence was because Lancial purposely shielded it.

child pornography *on July 9th* …, the evidence that those images were in an inaccessible folder on that date was insufficient."[7]  (Emphasis added.)

¶24    Lancial's focus on whether the evidence established possession of child pornography on the specific date alleged in the Information, without further argument, is misplaced.  Long ago, our supreme court held that

> unless some material right of the defendant is affected, as for example when such change might bring the alleged offense within some period of statutory limitation, the prosecution is not formally tied to any such date [alleged in the Information] and may prove the commission of the offense charged on some other day within a reasonable limitation.

*Hess v. State*, 174 Wis. 96, 99, 181 N.W. 725 (1921).  The court later reiterated this principle, stating:  "The State is not formally tied to any date, but may, within reasonable limitations, prove the commission of the offense charged on any other [date] substantially corresponding with the date charged."  *Hawkins v. State*, 205 Wis. 620, 624, 238 N.W. 511 (1931); *see also Eaton v. State*, 252 Wis. 420, 422, 31 N.W.2d 618 (1948); *Thomas v. State*, 92 Wis. 2d 372, 386, 284 N.W.2d 917 (1979) (concluding that the "failure to prove the specific date of the offense is not fatal to the state's case against the defendant"); WIS JI—CRIMINAL 255 (2000) (instructing that the State need not "prove that the offense was committed on the

---

[7] Lancial seems to suggest—without developing an argument or citing any legal authority—that our sufficiency-of-the-evidence analysis should be guided by, and limited to, the State's "position [or arguments] at trial," which "was that Mr. Lancial was guilty because, on July 9, 2019, ten images of child pornography were found in the cache folder of the gallery application on his phone."  We, however, need not address this argument because it is undeveloped and unsupported by legal authority.  *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).  Accordingly, our analysis is guided by the relevant law, including WIS. STAT. § 948.12(1m) and *State v. Mercer*, 2010 WI App 47, 324 Wis. 2d 506, 782 N.W.2d 125, and by the instructions provided to the jury in this case, which Lancial does not contend were erroneous.

precise date alleged" in the Information "[i]f the evidence shows beyond a reasonable doubt that the offense was committed on a date near the date alleged").

¶25 Even if we assume that the State failed to present sufficient evidence that Lancial affirmatively accessed the images on July 9, 2019, Lancial has not argued that the State's failure to do so affected any of his material rights. *See Hess*, 174 Wis. at 99. In particular, he has not argued that there is a potential statute of limitations issue,[8] *see id.*, nor has he argued that he was denied due process because the Information failed to inform him of the nature and cause of the accusation, *see Thomas*, 92 Wis. 2d at 387-88. The only argument that we can discern from Lancial's appellate briefing is that the date of offense is material because the State chose to identify a date in the Information. Lancial, however, does not explain how or why the specific date is material or a necessary part of the State's burden of proof, and we therefore decline to consider this issue further. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we need not consider undeveloped arguments).

¶26 Here, the State presented evidence that would allow a fact finder to reasonably infer that Lancial had accessed the ten images of child pornography within four or five months before law enforcement seized his cell phone on July 9, 2019. The State demonstrated that law enforcement had received a cyber tip in March 2019 regarding "child exploitation material" that was associated with the IP address at Lancial's father's home. Officer Zassenhaus also testified that law

---

[8] We have found no evidence in the record suggesting that the cell phone at issue—a Samsung Galaxy J7—even existed six years before the State commenced this prosecution in July 2019. *See* WIS. STAT. § 939.74(1) (requiring the prosecution of a felony offense to be commenced within six years, except as otherwise provided). Indeed, Lancial stated in his police interview that he acquired the phone about one or two months before law enforcement seized it.

enforcement later "received multiple cyber tips" regarding additional activity at the same IP address on dates in June 2019.

¶27 Although Officer Zassenhaus conceded that she did not know whether Lancial obtained the images found on his cell phone in March, June, or on some other date, the jury could still reasonably infer—from the numerous cyber tips and from the Tor Onion Browser and the VPNs on Lancial's phone—that Lancial was actively using his phone to access child pornography and that he affirmatively accessed the images at issue in this case during this four- to five-month period. Moreover, Lancial stated in his recorded interview with Zassenhaus that he had acquired the phone within one or two months of its seizure, which, if believed, further limits the time period in which Lancial could have accessed the images using that phone.

¶28 Lancial does not address whether proof of the offense within four or five months from the date alleged in the Information is "within reasonable limitations" or whether the dates proved "substantially correspond" with the date alleged. *See Hawkins*, 205 Wis. at 624. From our review of the record, we note that the probable cause portion of the criminal complaint alleged that an image of suspected child pornography was uploaded to the Internet on March 3, 2019, from Lancial's father's IP address. Lancial also had his own knowledge about when he acquired the phone, which, again, was apparently within one or two months of law enforcement seizing the phone. Lancial therefore had reasonable notice of the general timeline at issue in this case. Given these facts, and Lancial's lack of argument to the contrary, we conclude that the time period was proved at trial within a reasonable limitation of, and substantially corresponded with, the "on or about July 9, 2019" date alleged in the Information.

¶29 In sum, Lancial has not overcome his heavy burden of establishing that the evidence could not reasonably have supported a finding of guilt. The evidence supported reasonable inferences that Lancial affirmatively accessed the ten images of child pornography when they were saved to the gallery application of his cell phone and when the images were added to the cache folder of the gallery application. Although the State did not produce direct evidence of when these affirmative actions occurred, such evidence is not required. *See **State v. Bohannon***, 2013 WI App 87, ¶30, 349 Wis. 2d 368, 835 N.W.2d 262 ("[A] conviction may be based in whole or in part upon circumstantial evidence." (citation omitted)). Rather, the jury could reasonably infer that Lancial accessed these images within four to five months before the date alleged in the Information.

## II. Law enforcement's search of Lancial's cell phone

### A. *Scope of the warrant*

¶30 Both the Fourth Amendment to the United States Constitution and article I, section 11 of the Wisconsin Constitution guarantee that persons shall be secure from unreasonable searches and seizures and that no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized. "The particularity requirement fulfills three objectives. It prevents general searches, the issuance of warrants on less than probable cause[,] and the seizure of objects other than those described in the warrant." ***State v. Sveum***, 2010 WI 92, ¶28, 328 Wis. 2d 369, 787 N.W.2d 317 (citation omitted). This protection keeps the State from "engaging in general exploratory rummaging through a person's papers and effects in search of anything that might prove to be incriminating." ***State v. Noll***, 116 Wis. 2d 443, 450, 343 N.W.2d 391 (1984). "A particular warrant also 'assures the individual

whose property is searched or seized of the lawful authority of the executing officer, his [or her] need to search, and the limits of his [or her] power to search.'" *Groh v. Ramirez*, 540 U.S. 551, 561 (2004) (citation omitted).

¶31 Even where a valid warrant is issued, "[a] search 'must be conducted reasonably and appropriately limited to the scope permitted by the warrant.'" *State v. Andrews*, 201 Wis. 2d 383, 390, 549 N.W.2d 210 (1996) (quoting *State v. Petrone*, 161 Wis. 2d 530, 542, 468 N.W.2d 676 (1991), *overruled on other grounds by State v. Greve*, 2004 WI 69, ¶31 & n.7, 272 Wis. 2d 444, 681 N.W.2d 479). "Whether an item seized is within the scope of a search warrant depends on the terms of the warrant and the nature of the items seized." *Id.* at 390-91 (quoting *Petrone*, 161 Wis. 2d at 542). When officers exceed the scope of a search warrant, courts will generally exclude evidence that is obtained outside the warrant's scope. *See State v. Pender*, 2008 WI App 47, ¶9, 308 Wis. 2d 428, 748 N.W.2d 471.

¶32 Here, the circuit court denied Lancial's suppression motion, concluding that law enforcement did not exceed the scope of the warrant by searching Lancial's cell phone. When reviewing a circuit court's denial of a suppression motion, we uphold the court's findings of historical fact unless they are clearly erroneous, and we independently apply constitutional principles to those facts. *State v. Burch*, 2021 WI 68, ¶14, 398 Wis. 2d 1, 961 N.W.2d 314. The interpretation of a warrant's language is a question of law that we review de novo. *See State v. Pinder*, 2018 WI 106, ¶24, 384 Wis. 2d 416, 919 N.W.2d 568.

¶33 Lancial concedes that law enforcement had a valid search warrant to seize his phone and that they lawfully did so pursuant to the warrant, but he argues

16

that the officers exceeded the scope of the warrant when they later searched his cell phone. In particular, Lancial argues that the warrant authorized only a search of his father's residence, the vehicles associated with the residence, and persons located in the residence. Thus, he argues the warrant did not grant law enforcement authority to search his cell phone.

¶34 We agree that the warrant did not authorize a search of Lancial's cell phone. The warrant first described Officer Zassenhaus's identification of the relevant premises, which were Lancial's father's residence and any vehicles associated with that residence. The warrant then stated that the premises contained certain things, including electronic devices, that may constitute evidence of child pornography:

> there are now located and (concealed) (in plain view) certain things, to-wit: laptops, tablets, or any electronic device that has user generated data stored in internal and external memory including e-mail, photos, video or other form of electronic communications or data included therein.

> which things may constitute evidence of a crime, to-wit: possession of child pornography contrary to WIS. STAT[]. [§] 948.12 and the subs thereunder.

The warrant further noted that Zassenhaus "prayed that a search warrant be issued to search said premises or phones for said things."[9]

¶35 Although Officer Zassenhaus requested a warrant to search cell phones found on the premises, the circuit court's order did not grant such

---

[9] The warrant's language noting Officer Zassenhaus's request differed slightly from the language in her affidavit. In Zassenhaus's affidavit, she "pray[ed] that a search warrant be issued to search said premise[s], person(s), electronics for said data."

17

authority. It authorized only a search of the premises, the associated vehicles, and the associated persons:

> NOW, THEREFORE, in the name of the State of Wisconsin, you are commanded forthwith *to search the said premises, vehicle and persons* for said things, and if the same or any portion thereof are found to bring the same and the person in possession, if the same are found, and return this warrant within 48 hours before this Court and be dealt with according to law.

(Emphasis added.) In addition, the warrant's authorization to search for "said things" does not authorize law enforcement to search for digital data that might be in a cell phone because "said things" refers to the "certain things" already mentioned in the warrant. The warrant explained that the "certain things" law enforcement sought to find and seize were "laptops, tablets, or any electronic device that has user generated data …[,] which things may constitute evidence of … <u>possession of child pornography</u>." In other words, the warrant authorized law enforcement to search for and seize only the electronic devices that held such digital data, not to search those devices for the data itself.[10] Accordingly, the warrant did not authorize law enforcement to search Lancial's cell phone.

¶36 The State raises several counterarguments, but, for the reasons explained below, each one fails.

---

[10] The warrant also used the phrase "said things" in Officer Zassenhaus's request "to search said premises or phones for said things." Although this reference to "said things" is puzzling because a search of a cell phone would not reveal a physical object, such as the "certain things" already mentioned in the warrant, this confusion cannot be resolved without adding language to the warrant that the warrant did not already contain or construing the warrant in a manner contrary to its plain terms—especially its actual authorizing language.

18

¶37 The State first argues that "the warrant explicitly authorized the search of phones found at the Lancials' address." Specifically, it contends that the warrant "includes a line that is explicit that the search warrant to be issued was 'to search said premises or phones for said things'—in this case, child pornography."

¶38 The State's focus on this one line, however, is misplaced and wholly ignores the surrounding language in the warrant. As we explained above, this line in the warrant noted Officer Zassenhaus's request to search the premises and phones: "WHEREAS, Maloree N. Zassenhaus has … *prayed that a search warrant be issued* to search said premises or phones for said things."[11] (Emphasis added.) But the circuit court's order in the warrant did *not* authorize law enforcement to search any cell phones; it authorized only a "search [of] the said premises, vehicle and persons for said things."

¶39 Moreover, to the extent the State contends that the term "said things" means child pornography, we reject that argument because the plain language of the warrant earlier defined the "things" located on the premises as "laptops, tablets, or any electronic device that has user generated data." Although the warrant states that the said "things may constitute evidence of … possession of child pornography," that phrase does not alter the definition of "things," nor does it define "things" as child pornography itself. Thus, the phrase "said things" is

---

[11] If we were to accept the State's interpretation of the warrant, it would create a puzzling situation in which the warrant would apparently permit a search of the cell phones found on the premises but not the other electronic devices. We cannot discern any rational reason why the circuit court in this case would permit a search of cell phones, which hold "the privacies of life," *see Riley v. California*, 573 U.S. 373, 403 (2014), but not a search of other electronic devices that presumably hold similar data and information.

19

limited to the "certain things"—i.e., physical devices which themselves could contain images of child pornography—already mentioned in the warrant.

¶40     The State next argues that "even if this [c]ourt concludes that the warrant lacked sufficient specificity, [Officer] Zassenhaus's accompanying affidavit is clear that the search warrant was to 'search said premise[s], person(s), electronics for said data.'"  The State contends that "where a warrant contains only general language, it can be rendered adequate by references in an affidavit that are properly incorporated into the warrant."  *See Castle News Co. v. Cahill*, 461 F. Supp. 174, 181 (E.D. Wis. 1978).  The State's argument is flawed for two reasons.

¶41     First, Lancial did not argue—nor did we conclude—that the search warrant in this case "lacked sufficient specificity."  Lancial concedes, and we agree, that the search warrant met the constitutional requirement that a warrant state with particularity the places to be searched and the items to be seized.  *See* U.S. CONST. amend. IV; WIS. CONST. art. I, § 11; *see also State v. Tate*, 2014 WI 89, ¶28, 357 Wis. 2d 172, 849 N.W.2d 798.  Therefore, the issue is not whether the warrant contained sufficient specificity to pass constitutional muster.  Rather, the issue is whether the search of Lancial's cell phone exceeded the scope of the warrant as written.

¶42     Second, the State's argument assumes, without explanation, that Officer Zassenhaus's affidavit was incorporated by reference into the warrant.  Several federal courts of appeals have recognized that "a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant."  *Groh*, 540 U.S. at 557-58.  Here, the only potentially relevant

language in the warrant stated that "Zassenhaus has this day complained (in writing) (under oath) to the said Court." This language, however, does not express or suggest any intention by the circuit court to incorporate Zassenhaus's affidavit into the warrant. *See **id.*** at 555, 558 (concluding that "the warrant did not incorporate other documents by reference," even though the warrant did "recite that … the affidavit established probable cause … and … sufficient grounds … for the warrant's issuance"); *see also* **United States v. Maxwell**, 920 F.2d 1028, 1032-33 (D.C. Cir. 1990) ("[T]he warrant must … contain 'suitable words of reference' evidencing the magistrate's explicit intention to incorporate the affidavit."). We therefore cannot consider Zassenhaus's affidavit when interpreting the warrant's language.[12]

¶43 In the alternative, the State argues that the warrant permitted a search of Lancial's cell phone because the cell phone was located within the premises described in the warrant and "is a reasonable repository of evidence of possession of child pornography." In doing so, the State analogizes this case to **State v. Schaefer**, 2003 WI App 164, 266 Wis. 2d 719, 668 N.W.2d 760, in which law enforcement searched the defendant's computer and other external storage devices for child pornography while searching his home pursuant to a warrant. *See **id.***, ¶2.

¶44 Consistent with the State's arguments, the United States Supreme Court has held that "[a] lawful search of fixed premises generally extends to the

---

[12] Even if we could consider Officer Zassenhaus's affidavit, the affidavit would not change our conclusion here. The affidavit confirms that Zassenhaus *requested* a warrant that would authorize her to "search said premise[s], person(s), electronics for said data." But, again, the warrant did not include language authorizing a search of the electronic devices, nor did it define the object of the search as the data contained in those electronic devices.

entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search." *United States v. Ross*, 456 U.S. 798, 820-21 (1982). Based on that general rule, the Court explained that

> a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found. A warrant to open a footlocker to search for marihuana would also authorize the opening of packages found inside. A warrant to search a vehicle would support a search of every part of the vehicle that might contain the object of the search.

*Id.* at 821. Pursuant to *Ross*, our supreme court has recognized the general rule that "a premises warrant authorizes the search of all items on the premises so long as those items are plausible receptacles of the objects of the search." *Andrews*, 201 Wis. 2d at 389.

¶45 Lancial does not dispute these general principles. Rather, he argues that cell phones are categorically excluded from the rule regarding premises warrants. In support of that proposition, Lancial cites legal authority recognizing that police generally need a warrant before searching the contents of a cell phone. *See Riley v. California*, 573 U.S. 373, 401 (2014); *Carpenter v. United States*, 585 U.S. ___, 138 S. Ct. 2206, 2214 (2018); *Burch*, 398 Wis. 2d 1, ¶¶37-38 (Rebecca Grassl Bradley, J., concurring). Lancial further argues that the State's reliance on *Schaefer* is misplaced because it was decided prior to *Riley* and, therefore, is not controlling.

¶46 We agree with Lancial's conclusion that law enforcement's search of his cell phone cannot be justified pursuant to the general rule regarding premises warrants, but we reach this conclusion for a much simpler and narrower reason

than those articulated by Lancial. *See State v. Castillo*, 213 Wis. 2d 488, 492, 570 N.W.2d 44 (1997) ("An appellate court should decide cases on the narrowest possible grounds."). We conclude that the premises warrant in this case did not authorize law enforcement to search Lancial's cell phone because "the object[s] of the search"—as provided by the terms of the search warrant—were for the electronic devices in Lancial's father's home and not the digital data stored on those devices. *See Ross*, 456 U.S. at 820-21; *see also Andrews*, 201 Wis. 2d at 389.

¶47 As discussed above, the warrant authorized law enforcement to search Lancial's father's residence for "said things," which were defined as "laptops, tablets, or any electronic device that has user generated data stored in internal and external memory." Thus, the objects of the search were the physical, electronic devices in Lancial's father's home. Because the objects of the search were physical in nature, the digital storage on Lancial's cell phone was not a "plausible receptacle[]," *see Andrews*, 201 Wis. 2d at 389, or a "container[] in which the [electronic devices] might be found," *see Ross*, 456 U.S. at 820-21.

¶48 The State seems to suggest that the objects of the search extended beyond the items named in the warrant and included "evidence of possession of child pornography." The State's suggestion is a nonstarter. If the "objects of the search" could be construed so broadly as to include any *evidence* of the crime under investigation, there seemingly would be no limit to the containers that law enforcement could search pursuant to a warrant. For example, a warrant authorizing a search of a residence for a stolen vehicle would allow law enforcement to search every crevice in the home for digital storage devices and then to search those devices for "evidence" of the stolen vehicle, such as images, texts, or emails about the vehicle. This broadening would render the general rule

regarding premises warrants meaningless. Accordingly, when a warrant has been issued, the "objects of the search" must be determined based on the objects named in the warrant. *See Andrews*, 201 Wis. 2d at 403 ("[P]olice can search all items found on the premises that are plausible repositories for objects *named* in the search warrant." (emphasis added)).

¶49 The State's reliance on *Schaefer* is also unpersuasive. The State asserts that "[i]n *Schaefer*, this [c]ourt upheld the search of a defendant's computer for child pornography even though the premises warrant did not specifically authorize such a search." Contrary to the State's assertion, we never considered whether the premises warrant in *Schaefer* authorized a search of the defendant's computer. *See Schaefer*, 266 Wis. 2d 719, ¶¶20-22. Even if we had, the warrant in *Schaefer* was materially different from the warrant in this case because the warrant in *Schaefer* explicitly authorized law enforcement to seize "relevant images of juveniles estimated to be of varying ages, which are stored in electronic form on a computer system and/or as traditional photographs." *Id.*, ¶¶25, 27. Thus, the objects of the search in *Schaefer* were significantly different from—and broader than—the objects of the search in this case.

¶50 Given the foregoing analysis, we need not reach Lancial's argument that cell phones are categorically excluded from the general rule regarding premises warrants and plausible receptacles of the objects of the search. Nevertheless, we question Lancial's suggestion that *Riley* and *Carpenter* control the issue in this case. Unlike the arguments advanced in *Carpenter* and in *Riley*, the State does not dispute that it conducted a "search" within the meaning of the Fourth Amendment, *see Carpenter*, 138 S. Ct. at 2213-20, nor does it attempt to apply the warrant exception for a search incident to arrest, *see Riley*, 573 U.S. at 381-403. Rather, the State contends that the premises warrant authorized law

24

enforcement to search Lancial's cell phone for evidence of child pornography. Although Lancial suggests that, under *Carpenter* and *Riley*, cell phones are not containers in which law enforcement can search pursuant to a premises warrant, *Carpenter* and *Riley* did not involve a premises warrant and Lancial fails to adequately explain how either of those cases apply to a factual situation, such as here, where a premises warrant had been issued.

¶51    We are nonetheless cognizant of the important principles discussed in *Riley* and by members of our supreme court in *Burch*, *see Burch*, 398 Wis. 2d 1, ¶¶36, 64, 92 (Rebecca Grassl Bradley, J., concurring; Dallet, Karofsky, & Ann Walsh Bradley, JJ., concurring in part, dissenting in part), and those principles support our conclusion that law enforcement exceeded the scope of the warrant by searching Lancial's cell phone.  As the Court recognized in *Riley*, "[c]ell phones differ in both a quantitative and a qualitative sense from other objects" that might be kept on a person, and "they hold for many Americans 'the privacies of life.'" *Riley*, 573 U.S. at 393, 403 (citation omitted).  A search of a cell phone

> would typically expose to the government far more than the most exhaustive search of a house: A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form—unless the phone is.

*Id.* at 396-97.   Thus, "law enforcement generally must get a warrant before searching a cell phone."  *Burch*, 398 Wis. 2d 1, ¶38 (Rebecca Grassl Bradley, J., concurring; citing *Riley*, 573 U.S. at 403); *see also id.*, ¶72 (Dallet, J., concurring in part, dissenting in part) ("In the Fourth Amendment context, … cell phone data is in an evidence class of its own because it 'implicate[s] privacy concerns far beyond those implicated by the search of' other physical belongings." (second alteration in original; quoting *Riley*, 573 U.S. at 393)).   Here, law enforcement

failed to abide by this requirement by searching Lancial's cell phone without a warrant authorizing that search and, therefore, violated his constitutional rights against unreasonable searches and seizures.

¶52 Finally, citing WIS. STAT. § 968.22, the State contends that we should "decline Lancial's invitation to overturn his conviction based on what amounts to, at most, a clerical error." The State, however, fails to demonstrate that the warrant included "a clerical error." Although the warrant and supporting affidavit suggest that Officer Zassenhaus requested a warrant to search electronic devices, the warrant plainly did not grant that request. Courts often do not grant exactly what a party requests, including requests regarding the scope of a search warrant. It therefore is not unreasonable to conclude that the warrant-issuing court denied Zassenhaus's request to search electronic devices—at least until after the initial warrant was effectuated and a separate search request was proffered. Even if we could conclude that some sort of clerical error had occurred, the State has not explained how such a clerical error would "not affect[] the substantial rights of [Lancial]." *See* § 968.22 ("No evidence seized under a search warrant shall be suppressed because of technical irregularities not affecting the substantial rights of the defendant."). Accordingly, we need not consider this argument further. *See Pettit*, 171 Wis. 2d at 646-47.

¶53 In sum, we conclude that law enforcement exceeded the scope of the warrant by searching Lancial's cell phone because the warrant did not specifically authorize a search of the seized electronic devices, nor did it authorize law enforcement to seize the digital data stored on those devices. In addition, because the objects of the search—as expressly provided in the warrant—were physical items, the digital storage on Lancial's cell phone was not a plausible container in

26

which those items might have been located. Thus, law enforcement was not entitled to search Lancial's cell phone pursuant to the premises warrant.

### B. *Exclusion*

¶54    The State argues that even if law enforcement unlawfully obtained evidence from Lancial's cell phone, "exclusion is not an appropriate remedy." Specifically, the State argues that evidence should not be excluded because the good-faith exception to the warrant requirement applies in this case. The State emphasizes that Officer Zassenhaus thought, based on her experience, that she had the legal authority to search Lancial's cell phone. Furthermore, the State seems to suggest that applying the exclusionary rule to this case would be inappropriate because Lancial has failed to "identify any police misconduct that would be deterred by suppressing the child pornography police found on his phone."

¶55    From the outset, we recognize that the State's argument regarding exclusion appears to conflate the exclusionary rule with the good-faith exception to that rule. The State never explicitly argues that the exclusionary rule does not apply, but the State's discussion of **Burch** seems to suggest that the rule does not apply. *See **Burch***, 398 Wis. 2d 1, ¶¶16-26. The issue of whether the exclusionary rule applies is different, however, from the issue of whether the good-faith exception applies. *See **State v. Kerr***, 2018 WI 87, ¶23, 383 Wis. 2d 306, 913 N.W.2d 787 (concluding that the court need not decide whether the good-faith exception applied because the exclusionary rule did not apply in the first instance). To the extent the State argues that the exclusionary rule does not apply in the first instance, we disagree.

¶56    Evidence obtained through an unlawful search is ordinarily excluded at trial under the exclusionary rule. ***State v. Prado***, 2021 WI 64, ¶56, 397 Wis. 2d

719, 960 N.W.2d 869.  The exclusionary rule applies where police conduct is "sufficiently deliberate that exclusion can meaningfully deter it, and [is] sufficiently culpable that such deterrence is worth the price paid by the justice system."  **Burch**, 398 Wis. 2d 1, ¶16 (citation omitted).  Police misconduct is sufficiently deliberate and can be effectively deterred through the exclusion of evidence where the conduct is "deliberate, reckless, or grossly negligent," or, in some circumstances, where the conduct involves "recurring or systemic negligence."  **Id.**, ¶17 (citation omitted).  In contrast, police misconduct is not sufficiently deliberate "when the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence."  **Id.** (citation omitted).

¶57     Here, law enforcement's lack of knowledge regarding the scope of the warrant—given its plain language regarding what was authorized—was grossly negligent, if not reckless.  Although Officer Zassenhaus may have thought she had authority to search "any electronic device that was seized at the time of the warrant," that belief was not objectively reasonable because the plain language of the warrant did not permit such a search.[13]  Importantly, the language of the warrant was not complicated or confusing, nor would it require any specialized knowledge.  An objectively reasonable officer would have therefore understood that the warrant permitted what it said—namely, a search of only "the said premises, vehicle and persons."  Thus, Zassenhaus's lack of knowledge regarding the scope of the warrant was not simple negligence because, as the officer

---

[13] Although the State seems to suggest that Officer Zassenhaus reasonably believed that she had the legal authority to search Lancial's cell phone, it has not developed any argument that such a belief or understanding was actually reasonable.

executing the warrant, it was imperative that she understand the scope of the warrant, which could have been discerned from the warrant itself.

¶58 In addition, the benefit of suppression outweighs the societal cost of excluding evidence obtained from law enforcement's unlawful search in this case. Law enforcement can and should be deterred from ignoring the scope of a warrant. This concern is especially keen in circumstances, such as here, where law enforcement wants to search a cell phone, which is a device known to contain the most private and sensitive information of many individuals, *see Riley*, 573 U.S. at 376-97, 402, and where the scope can be easily discerned from the warrant's simple and plain language. Accordingly, we conclude there was sufficiently deliberate and sufficiently culpable police misconduct in this case to justify the application of the exclusionary rule. *See Burch*, 398 Wis. 2d 1, ¶16.

¶59 The State's argument regarding the good-faith exception to the exclusionary rule also fails. The exclusionary rule "is not absolute," and courts have created some exceptions, such as the good-faith exception, where exclusion of evidence would not serve the exclusionary rule's purpose. *Prado*, 397 Wis. 2d 719, ¶¶56, 59. Under the good-faith exception, unlawfully obtained evidence need not be excluded at trial in two limited circumstances: (1) "when a law enforcement officer has reasonably and objectively relied on settled law (whether statute or binding judicial precedent) that was subsequently overruled"; or (2) "when law enforcement relies on 'a warrant that was subsequently invalidated or that was based on erroneous information resulting from isolated police negligence attenuated from the arrest.'" *Id.*, ¶59 (citation omitted).

¶60 Neither of these two limited circumstances are present in this case. The State has made no argument that law enforcement reasonably and objectively

relied on settled law that was subsequently overruled. *See id.* Moreover, this case is not one where law enforcement relied on a warrant that was subsequently invalidated or based on erroneous information, *see id.*; rather, as discussed above, the scope of the warrant plainly did not extend to a search of Lancial's cell phone. Accordingly, the good-faith exception cannot apply under these circumstances.

¶61 Even if this case involved one of the limited circumstances in which the good-faith exception could apply, the State has not satisfied Wisconsin's additional requirements for applying the good-faith exception. In Wisconsin, our supreme court has adopted a good-faith exception that is slightly more exacting than its federal counterpart, holding that article I, section 11 of the Wisconsin Constitution "required additional protection." *State v. Scull*, 2015 WI 22, ¶35, 361 Wis. 2d 288, 862 N.W.2d 562 (citing *State v. Eason*, 2001 WI 98, ¶63, 245 Wis. 2d 206, 629 N.W.2d 625). In order for the good-faith exception to apply in scenarios involving a warrant, the State must show: (1) "that the process used in obtaining the search warrant included a significant investigation"; and (2) "a review [was conducted] by either a police officer trained and knowledgeable in the requirements of probable cause and reasonable suspicion, or a knowledgeable government attorney." *Id.* (quoting *Eason*, 245 Wis. 2d 206, ¶74).

¶62 From our review of the record, we cannot conclude that the warrant was reviewed by either a police officer trained and knowledgeable in the requirements of probable cause and reasonable suspicion or by a knowledgeable government attorney. Neither the warrant nor the supporting affidavit state that the warrant and circumstances were reviewed by the district attorney's office or another government attorney. In addition, although the supporting affidavit states that Officer Zassenhaus is "a certified police officer employed by the City of Menomonie Police Department for the past 8 years," nothing in the affidavit

suggests that she is "trained in, or very knowledgeable of, the legal vagaries of probable cause and reasonable suspicion," *see **Eason***, 245 Wis. 2d 206, ¶63, much less in the particular context of what occurred in this case—a data search of a cell phone. Importantly, Zassenhaus's status as a police officer, without more, is not enough to satisfy this second requirement because most warrants are issued upon the complaint of a law enforcement officer or government attorney. If simply being a law enforcement officer were enough to satisfy the second requirement, that requirement would be rendered largely meaningless.

¶63 In short, the circumstances here support our application of the exclusionary rule to the evidence obtained from law enforcement's unlawful search of Lancial's cell phone, and the good-faith exception does not apply.

## CONCLUSION

¶64 The evidence presented at trial was sufficient to convict Lancial of the ten counts of possession of child pornography. The circuit court, however, erred by denying Lancial's motion to suppress. The warrant authorizing a search of Lancial's father's residence did not authorize a search of any electronic devices, nor did it authorize law enforcement to seize digital data on those devices. Law enforcement therefore exceeded the scope of the warrant by searching Lancial's cell phone, and the evidence obtained from that search must be suppressed. Applying the exclusionary rule in this case is appropriate, and the good-faith exception to the exclusionary rule does not apply. Accordingly, we reverse the judgment and remand for further proceedings consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded for further proceedings.

Not recommended for publication in the official reports.